[No. 24860. *En Banc.* December 19, 1934.]

J. L. SMITH, *Respondent,* v. THE DEPARTMENT OF
LABOR AND INDUSTRIES, *Appellant.*[1]

*The Attorney General* and *Browder Brown, Assistant,* for appellant.

*Vanderveer & Bassett,* for respondent.

GERAGHTY, J.—During the month of January, 1932,
J. L. Smith, then engaged in extrahazardous work and
within the provisions of the workmen's compensation
act, suffered an injury which resulted in his receiving
care and compensation for time lost. His claim was

[1]Reported in 38 P. (2d) 1016.

closed March 12, 1932, without award for any permanent partial disability.

July 15, 1932, he applied for a rehearing before the joint board, alleging aggravation of his injuries. Claimant, not having applied for such a rehearing within sixty days from the date of the closing of his claim by the department, was limited before the joint board to the contention that his condition had become aggravated since his claim was closed. The joint board entered an order sustaining the action of the department and refusing claimant further relief.

From this order, the claimant appealed to the superior court, which, after a hearing, entered judgment reversing the order of the joint board and awarding Smith six hundred dollars for a twenty degree permanent partial disability found by the court to be legally traceable to aggravation of compensable injuries suffered by claimant. From this judgment, the department appeals, assigning error upon certain of the findings of the trial court and upon the entry of judgment in claimant's favor.

The trial court found respondent disabled to the extent of forty degrees (in other words, that he was fifty per cent disabled, a disability estimated at eighty degrees representing total disability), but that one-half of this disability was due to high blood pressure having no connection with the injuries which respondent had suffered, and that respondent was entitled to compensation from the state only to the extent of twenty degrees.

Respondent was first injured May 28, 1930, on which date he was kicked by a horse. After this injury, respondent was cared for by the department, and received some compensation for loss of time. He resumed work June 28, 1930, and continued to work until January 22, 1932, when he was again injured

under the following circumstances: In order to climb through a window through which he was about to throw wood which he was delivering to a customer, he stepped upon a box, which slipped out from under him, throwing him down in such a manner that he struck the lower portion of his back upon a board. Respondent stated that he fell about two and one-half feet, "from that box to the bottom of the window."

Before the joint board, respondent contended that his condition had become aggravated, and that he was entitled to an award on the basis of permanent partial disability. Testifying on his own behalf as to his present condition, respondent said that it was difficult for him to stoop, and that

"It seems to be a nervous thing, that back will hurt me across there at night when I lay down, maybe I will go to sleep for an hour, and it hurts so bad I have to get up and sit on the edge of the bed."

He testified that he was in pain all the time, but that the pain was worse when he stooped or lay down. He complained of lameness in his right leg, and that he suffered from bladder trouble. It clearly appears that, at the time of the hearing, he was suffering from high blood pressure, his own witnesses testifying that this was a factor seriously contributing to his disability.

Physicians called by respondent, who had examined him shortly before the hearing and had studied X-rays of his spinal and pelvic structure, testified that the X-rays showed evidence of considerable arthritis, around the fourth and fifth vertebræ, and that, in their opinion, the arthritis was traumatic in its origin, because it included only the two vertebræ. Respondent's medical witnesses testified that a reading of the X-ray plates indicated a fracture of the fifth lumbar vertebra on the right side, as well as a displacement

of the fourth and fifth vertebræ. They testified that, because of this condition, respondent was suffering from nerve irritation. One of these witnesses estimated respondent's disability at sixty degrees, testifying that, in his opinion, this condition was the result of the fractured vertebra; it being his theory that the fracture brought about the disability "through pressure on the nerves, or irritation of the nerves."

Physicians called by appellant testified, from an examination of respondent and of the X-ray plates, that, in their opinion, the respondent was suffering from arthritis of long standing. The presence of an arthritic condition was admitted by respondent's physicians, but it was their view that it had developed as the result of the fracture.

The testimony of the doctors is conflicting, and in some particulars irreconcilable. The testimony of one of respondent's physicians, Doctor Banks, however, is, we think, entitled to much weight, and had probative force independently of any technical interpretation of the X-ray pictures. He had been the respondent's physician before and after the accident. Testifying before the joint board, he said:

"Q. Doctor, what was Mr. Smith's condition March 9, 1932, when the state closed his claim? A. He was still disabled. Q. Still complaining of pain in his back. A. Yes. Q. Anything else besides that? A. Well, inability to work. Q. Was he able to work? A. Not to resume his occupation. Q. Have you treated him since March 9, 1932? A. Yes. Q. Is he improving under your treatment? A. I cannot say he is. Q. Would you say his condition is stationary? A. I would say it is even worse than it was before. Q. Before what? A. Before he was discharged. Q. In what way? A. He is less able to engage in occupation. Q. What is the basis of that belief? A. The man needs to go ahead with his work to earn a living, and he is unable to do it. Q. What examination or facts

lead you to conclude his physical condition has become worse since March 9, 1932? A. The fact he is unable to go ahead with any work at all at the present time, practically. Q. Was he able to do any work on March 9, 1932? A. He did some light work, but it seems to cause him pain, and he suffers more than he did at that time, apparently. Q. Is your conclusion that his condition is worse merely based on the fact he complains to you the pain is worse? A. No, I wouldn't say that. I think he is less able to do things. Q. What objective findings have you to substantiate the statement that his physical condition is worse than on March 9, 1932? A. I don't know as I can give you specific data in regard to that. Q. In your opinion, Doctor, if there is any increase in pain in the right side and back, is that due to the progress of the disease of arthritis, aggravated by the injury? A. Probably so.''

■ The burden rested upon respondent to show that, after the closing of his claim, the condition caused by his injury had become aggravated. A painstaking reading of the record convinces us that the condition caused by his injury did become aggravated, and that, at the trial before the joint board, he sustained the burden of proving this.

As we have seen, while respondent was paid time loss up to the date when his case was closed, no allowance was made for any partial permanent disability. Appellant contends that, whatever respondent's present condition, it is no worse than at the time his case was closed, and that, not having appealed from the determination of the department within the time limited, he is now foreclosed from urging that he was in fact then suffering from disability. But we are satisfied, as we have said before, that aggravation was established by a preponderance of the evidence.

■ Having reached the conclusion that the respondent was entitled to compensation, the trial court

faced the problem of determining the amount of compensation to be awarded. The case was before the court for trial *de novo,* and it became its duty to find the facts, not only that aggravation existed, but the extent of it and the measure of relief to be awarded respondent. *Babic v. Department of Labor and Industries,* 156 Wash. 537, 287 Pac. 32; *Johnston v. Department of Labor and Industries,* 163 Wash. 549, 2 P. (2d) 67. As we have seen, the trial court awarded respondent six hundred dollars for a twenty degree permanent partial disability. It found as a fact that the respondent was disabled to the extent of forty degrees, but that half of this disability was attributable to a condition of high blood pressure not traceable to his injury.

It must be difficult at best for either the department or court to make an accurate appraisal of the extent of compensable disability in cases of this kind. The best that can be done is approximate justice. This standard, we think, is met by the finding of the trial court, and we do not feel justified in disturbing its award.

Therefore, the judgment will be affirmed.

MILLARD, BLAKE, MAIN, MITCHELL, and HOLCOMB, JJ., concur.

BEALS, C. J. (dissenting)—It is undoubtedly true that respondent's physical condition is bad. He is suffering from high blood pressure and from an arthritic condition of the spine. For my part, however, I find no substantial evidence to the effect that his condition has become aggravated, or that, outside of the gradual hardening of his arteries, respondent, at the time of the trial below, was laboring under any greater physical disability than for some years prior thereto.

Before the joint board, respondent contended that his condition had become aggravated, and that he was entitled to an award on the basis of permanent partial disability. Testifying on his own behalf as to his present condition, respondent stated that it was difficult for him to stoop, and that, .

"It seems to be a nervous thing, that back will hurt me across there at night when I lay down, maybe I will go to sleep for an hour, and it hurts so bad I have to get up and sit on the edge of the bed."

He testified that he was in pain all the time, but that the pain was worse when he stooped or lay down. He complained of lameness in his right leg, and that he suffered from bladder trouble.

One of his physicians who had treated him for some time testified that respondent complained of pain in his back and "inability to work." On cross-examination, this witness testified as follows:

"Q. What objective findings have you to substantiate the statement that his physical condition is worse than on March 9, 1932. A. I don't know as I can give you specific data in regard to that. Q. In your opinion, Doctor, if there is any increase in pain in the right side and back, is that due to the progress of the disease of arthritis, aggravated by the injury? A. Probably so."

Respondent is well past fifty years of age, and suffered the removal of all his teeth about eight years before the date of his last injury. His testimony concerning the reason for the removal of his teeth was rather vague and unsatisfactory. It clearly appears that, at the time of the hearing, he was suffering from high blood pressure, his own witnesses stating that this was a serious contributing factor to his disability. During the year 1922, he suffered an injury to his

back, as to the results of which, if any, the record is silent.

Physicians called by appellant testified from examination of respondent and of the X-ray plates, and stated that, in their opinion, the arthritis from which respondent was suffering was of long standing. The testimony of the doctors is conflicting, and in some particulars cannot be reconciled.

The burden rested upon respondent to show that, after the closing of his claim, the condition caused by his injuries had become aggravated. It is not unreasonable to suppose that, with the passing of time, respondent would suffer more and more inconvenience and pain from the arthritic condition of his spine. I am satisfied that it cannot be held that this arthritic condition was traumatic in its origin. On that point, the medical evidence is in conflict, but respondent did not prove by any preponderance of the evidence that such was the case. The injury which respondent suffered when kicked by a horse resulted in a severe, though apparently more or less temporary, injury to his kidneys and bladder. While he now claims that he is suffering from bladder trouble, it can not be held from the testimony that any inconvenience which respondent labors under from this condition has become aggravated since the closing of his claim.

Consideration of the entire record convinces me that the same does not support the conclusion reached by the trial court to the effect that respondent was entitled to further compensation. While respondent's condition is unfortunate, I find no warrant in the record for holding that the minor and almost insignificant injury upon which he bases his claim herein is responsible for his present inability to work or for any aggravation of any preexisting condition which

92

entitles him to an award for permanent partial disability.

I accordingly dissent from the conclusion reached by the majority.

TOLMAN and STEINERT, JJ., concur with BEALS, C. J.