[No. 27816. Department One. March 15, 1940.]

PHIL LaLONE, *Appellant,* v. THE DEPARTMENT OF LABOR AND INDUSTRIES, *Respondent.*[1]

[1]Reported in 100 P. (2d) 26.

John C. Richards and Earl W. Husted, for appellant.

The Attorney General, T. H. Little and J. A. Kavaney, Assistants, for respondent.

SIMPSON, J.—Claimant sustained injury August 11, 1930, while engaged in extrahazardous employment. The accident occurred when a pile of timbers rolled down upon the dock where claimant was working as a longshoreman, and, as a result, both bones of his lower left leg were fractured near the ankle. He also sustained injury to several ribs, bruises on both wrists and legs, and on his right side and elbow.

The department of labor and industries recognized claimant's right to compensation and paid his time loss to July 21, 1931, at which time his case was closed with an allowance of 8° permanent partial disability.

On subsequent appeals to the joint board for reopening of his case, claimant was awarded, November 2, 1931, and December 11, 1934, additional allowances of 2° and 10° permanent partial disability. From the latter award, claimant took an appeal to the superior court. February 4, 1937, while that appeal was pending, claimant stipulated that he would withdraw his appeal upon receipt of an additional 10° permanent partial disability. The offer was accepted by the department, allowance was made accordingly, and the claim again closed February 19, 1937, with a total permanent partial disability recovery by claimant of 30°.

Shortly thereafter, March 1, 1937, claimant was again examined, at the instance of the department, by a board of three doctors. Their conclusions were as follows:

"Claimant's present condition is set forth in our physical examination. His complaints are numerous. It is our opinion the arthritic condition in his back pre-existed the injury, and the condition of his spine is in no way responsible for the injury he received. We believe his condition is fixed and that further treatment is not indicated. The disability caused by his accident is confined to his left ankle. We believe this man is able to carry on a gainful occupation and we recommend that his claim be closed. In viewing the files and noting compensation already allowed him, we believe he is amply compensated by the state."

December 7, 1937, claimant again petitioned for re-opening and reclassification of his claim, asking for further treatment and additional compensation for time loss and disability upon the following grounds:

"That since last adjudication of petitioner's case by the Department, his injuries have become aggravated by increasing weakness of his left leg, by increasing inability of internal organs of the chest and lower abdomen to function, resulting in chronic pleurisy, with increasing dizziness and numbness in petitioner's skull, and aggravation of injuries to petitioner's nervous system, all of which have contributed to rendering petitioner totally unable to work."

The department referred claimant to a commission of the same three doctors who had conducted his examinations September 1, 1932, and March 1, 1937. Two of these doctors had also participated in his examination October 20, 1931. After examining claimant January 12, 1938, they presented these conclusions:

"In view of the above results of this examination, we are of the opinion that there has been no aggravation of his condition as compared to his condition in March 1937. No treatment is needed and none is recommended, and it — our opinion that this case should remain closed with no further disability allowed."

Pursuant to these findings, the supervisor refused to reopen the claim.

Claimant then appealed to the joint board. February 14, 1938, his application for rehearing was granted. At the consequent hearing, March 24, 1938, the commission of examining doctors testified for the department, in conformity with their written reports on examinations of claimant made March 1, 1937, and January 12, 1938, to the effect that there had been no aggravation of his injuries since the last closing date, February 19, 1937.

Dr. Chandler, claimant's family physician, testified for him that, before his injury, he "was a strong husky man," but that now he is "unable to concentrate on anything in particular," and "is not able now to do the manual labor of any husky boy—a ten or twelve year old." The doctor also stated: "I think his condition is progressively worse since February, 1937."

With regard to several severe attacks of pleurisy for which he had treated claimant since that time, Dr. Chandler testified that he had known others to develop pleural or lung troubles following similar injuries. On cross-examination, he stated that the increasing disability to which claimant had recently become subject was undoubtedly the result of having the attacks of pleurisy. But when asked whether he could say that the pleurisy resulted from claimant's injury, Dr. Chandler answered, "I couldn't say that, no."

Dr. Wagner, who had examined claimant both as a member of the social security employability committee and in private practice, testified on claimant's behalf that he was unemployable due to traumatic neurosis and hypertrophic arthritis of the spine, and that claimant's condition had been getting worse since his first examination of him October, 1937. When cross-examined, Dr. Wagner said that he did not know when the arthritic condition had its inception, and that he could

not say definitely that it was due to the injury. He further stated that he did not see claimant when his claim was closed February 19, 1937, and that he could not testify whether his physical condition had become worse since that time.

July 5, 1938, the joint board having decided that claimant had failed to establish aggravation of his original injury since his claim was last closed February 14, 1937, the order of the supervisor was sustained.

Claimant then appealed to the superior court for Snohomish county. Trial to the court resulted in findings in favor of the department, and the appeal was dismissed. Appeal to this court followed.

Among other assignments of error, appellant urges that the trial court erred in refusing and overruling his motion for a new trial. The motion was based upon the following grounds:

(1) "Accident or surprise which ordinary prudence could not have guarded against.

(2) "Newly discovered evidence, material to plaintiff which he could not with reasonable diligence have discovered and produced at the trial.

(3) "That there is no evidence or reasonable inference from the evidence to justify the verdict or decision, or that it is contrary to law.

(4) "Error in law occurring at the trial and excepted to at the time by plaintiff."

We cannot accord further consideration to the issues raised by the first two grounds for a new trial. *Goss v. Department of Labor & Industries,* 177 Wash. 675, 33 P. (2d) 376.

As to the fourth issue raised by the motion, we are satisfied from examination of the record that no error of law occurred at the trial below.

The question raised by the third basis for the granting of a new trial will be disposed of in connection with appellant's remaining assignments of error. These may

be grouped together as relating to the principal question involved, i. e., whether, under the evidence as presented, the trial court erred in affirming the order of the joint board which denied to appellant further compensation.

Provision is made in Rem. Rev. Stat., § 7679 [P. C. § 3472] (h) for the reopening of claims for aggravation of injury. In the presentation of his claim to respondent department, the burden of proof was upon appellant to establish aggravation of his condition subsequent to the time his case was last closed, February 19, 1937, and to show that the aggravation was traceable to the injury upon which his original claim was based. *Smith v. Department of Labor & Industries,* 180 Wash. 84, 38 P. (2d) 1016; *Stevich v. Department of Labor & Industries,* 182 Wash. 401, 47 P. (2d) 32; and *Nagel v. Department of Labor & Industries,* 189 Wash. 631, 66 P. (2d) 318.

Upon taking his appeal to the superior court from the adverse ruling of the joint board, appellant was met with the provision of Rem. Rev. Stat., § 7697 [P. C. § 3488], which states that the decision of the department is *prima facie* correct. As he was attacking their ruling, the burden was on appellant to establish by the preponderance of the evidence the incorrectness of the conclusions reached by respondent department. *Matson v. Department of Labor & Industries,* 198 Wash. 507, 88 P. (2d) 825; *Cole v. Department of Labor & Industries,* 200 Wash. 296, 93 P. (2d) 413; and *Eyer v. Department of Labor & Industries,* 1 Wn. (2d) 553, 96 P. (2d) 1115.

It is also well established in this jurisdiction that in cases where, as in the case at bar, the cause of an injured workman's impaired physical condition must be ascertained, the triers of fact must depend to a large

extent upon the testimony and conclusions of the physicians, testifying as experts, who have made examinations of the workman's physical condition. *Matson v. Department of Labor & Industries, supra; Eyer v. Department of Labor & Industries, supra.*

With these legal principles in mind, we consider appellant's contention that the evidence was sufficient to show aggravation of his injuries subsequent to February 19, 1937. The tenor of the expert testimony relative to aggravation has already been set out in the description of the proceedings before the joint board. Appellant and his wife also testified in his behalf. Their testimony, like that of his doctors, clearly showed that, prior to his injury, appellant was an able-bodied man, who earned his living by the hardest kind of manual labor, and that, subsequent to his accident, he had been, to a large extent, an invalid.

A careful examination of the record, however, does not disclose any fact from which it can be held that his increased disability, if any, was due to aggravation of his original injury arising since his case was last closed.

The doctors testifying for appellant diagnosed his present disability as being due to totally different physical defects. Neither was willing to state that there was aggravation post-dating February 19, 1936, which was traceable to the original injury. The commission of three doctors who examined appellant March 1, 1937, and again January 12, 1938, stated specifically that there had been no aggravation during the interim.

We conclude that the decision of respondent department was justified by the evidence adduced at the hearing before the joint board, and that the affirmance of its order by the superior court was correct.

The judgment is affirmed.

MAIN, MILLARD, and ROBINSON, JJ., concur.

BLAKE, C. J. (dissenting)—I dissent. That plaintiff is totally disabled and has been for a long time, does not seem to be disputed. That his condition is due to the injury sustained in 1930, seems to me to be apparent not only from the testimony of physicians but from the repeated reopening of his case through the intervening years. His family physician who treated him at the time of his injury testified:

"Q. Now having reference to February, 1937, could you say or could you state, Doctor, from your knowledge, whether this man's physical condition has gotten better or worse or remained stationery? A. I think he is progressively worse. Q. And in what way would you say he was progressively worse? A. Well, he has lost weight. He is weaker. He is unable—well, he is unable to concentrate on anything in particular and keep it there. He is not able now to do the manual labor of any husky boy—a ten or twelve year old. Q. Is there any connection between his present disabled condition and his injury occasioned by longshoring in your opinion, Doctor? A. Well, I knew Mr. LaLone for a good many years before he was injured and I know when he was longshoring, whenever there was a hard job or anything they called on him. He always held down his end of the job on any ship, anytime, anywhere. And he was a strong, husky man then and he could work all day and then go to a party at night and still be all right for the next day, but since his injury he hasn't been able to do any of this. Since his injury, as time goes on, he has progressively grown worse, both in his—well, now the X-rays showed no broken ribs at the time of his injury, but that doesn't preclude injury to some of the pleural lining of the lungs, which I always thought he had, some injury of the lungs at the time of his injury when his leg was broken and his chest was crushed and his back injured. That was all done at the same time."

Another physician—an examiner for the department of social security—testified:

"Q. And have you since that time formed an opinion as to whether he is or is not employable based upon your examinations? A. Yes, Sir. Q. And what is that opinion? A. I believe he is unemployable, although this isn't an official report into the Social Security. He has been sent back for re-examination for employability since that original examination. Q. And his rating at this time is unemployable based on your examination? . . . Q. Oh, yes, you did make a final rating? A. No. Q. Did you make a later rating? A. Only as a private patient to me. Q. And what is your finding based upon that examination as to employability? A. I believe that he is unemployable. Q. For what reason, Doctor, what disabilities, if any? A. My diagnosis, is that what you want? Q. If you please. A. My diagnosis is traumatic neurosis and hypertrophic arthritis of the spine."

Plaintiff was thirty-nine years old at the time of his injury and weighed between one hundred forty and one hundred fifty pounds. At the time of the hearing in the superior court, he weighed one hundred twenty-five pounds. For the department's physicians to say, in face of plaintiff's case history, that his arthritic condition preexisted his injury, is, to say the least, extravagantly speculative. That he is suffering from *traumatic* neurosis and *traumatic* arthritis, seems to me to be established beyond a reasonable doubt. He should long ago have been classified as permanently disabled and placed on the pension rolls.