[No. 39167.    Department Two.    November 30, 1967.]

EVA L. CHALMERS, *Respondent,* v. THE DEPARTMENT OF
LABOR AND INDUSTRIES, *et al., Appellants.**

*The Attorney General* and *John T. Krall, Assistant,* and
*Keith, Winston & Repsold (Michael J. Cronin,* of counsel),
for appellants.

*Theodore M. Ryan,* for respondent.

DONWORTH, J.—October 31, 1962, 66-year-old John G.
Chalmers died from bronchopneumonia, which was due to
bronchogenic carcinoma (lung cancer). Until that time, he

*Reported in 434 P.2d 720.

had been employed by the Dawn Mining Company repairing and patching glass-lined tanks, which were used for the storage of acids.

November 28, 1962, his widow, respondent herein, filed a claim for a widow's pension with the Department of Labor and Industries, alleging that her husband died as a result of an industrial injury which he had suffered on March 28, 1960. June 14, 1963, the supervisor entered an order denying the claim. July 10, 1963, the widow appealed to the Board of Industrial Insurance Appeals, and the board granted the appeal on August 2, 1963. February 4, 1964, the board issued an order remanding the claim to the Department of Labor and Industries with directions to hold the order of June 14, 1963 in abeyance pending an investigation to determine whether or not the deceased, John Chalmers, had died as the result of an occupational exposure in the course of his employment. Thereafter, on August 19, 1964, the supervisor entered an order reaffirming the order of June 14, 1963, again rejecting the claim on the ground that there was no relationship between the cancer which caused Chalmer's death and his employment with the Dawn Mining Company.

September 24, 1964, appellant again appealed to the Board of Industrial Insurance Appeals, which appeal was granted on October 16, 1964. Hearings were conducted by the board on September 17, 1965, and proposed findings, conclusions, and an order of the hearings examiner, which were adverse to respondent, were entered. Respondent filed exceptions to the proposed decision and order, and, on December 9, 1965, the board affirmed the decision of its trial examiner. Respondent then appealed to the Superior Court for Stevens County.

Following a hearing by the court, sitting without a jury, a decision was entered in favor of respondent, reversing the decision of the board and allowing respondent's claim for benefits under the workmen's compensation act. May 27, 1966, findings of fact and conclusions of law were entered

by the trial court. This appeal is brought from the judgment for respondent.

The trial court, in its memorandum decision, outlined the pertinent facts surrounding and following decedent's injury of March 28, 1960, as follows:

> It is the contention of the petitioner that the deceased, on March 28, 1960, was working with a sealing product inside a tank and was overcome by its fumes to such an extent that he fell and injured himself. . . .
>
> Dr. M. B. Snyder was called to the mill of the Dawn Mining Company and, "Found the deceased unconscious, his breathing was shallow and irregular, he was ice cold and his clothes thoroughly drenched from lying in cold water . . . . It was almost fatal . . . .
>
> The workman was hospitalized until April 4, 1960, and returned to work April 7, 1960.[1] The doctor saw him several times after the accident and on March 28, 1961, a significant development occurred in the opinion of the doctor.
>
> A smart burning rash began to appear on the hands and wrist of the workman, and became worse after using the sealing product. "Skin on the hand and wrist acutely inflamed and thickened with a dry, angry appearance dermatitis, considered to be allergic dermatitis." The doctor saw him again on December 10, 1961, for a flareup of this same allergy involving his face and testified, "That in the absence of any other history from this man and no previous episode of this allergy, we assumed these recurring episodes were the result of the original condition which I consider was due to his contact with Epoxylite."
>
> One of the company employees testified also as to the allergy. He testified that the deceased was no longer required to use the product, "Because he showed up with an allergy to it. We knew he was allergic to it."
>
> Prior to the accident there had been a series of x-rays which were negative for three or four years. Dr. Snyder had been the attending physician of deceased for several years prior to March 28, 1960.
>
> On or about April, 1962, the x-ray showed a large shadow of which the doctors were suspicious and after

---

[1] A claim based on this injury was allowed, and on September 2, 1960, the supervisor entered an order closing the claim with no permanent disability award.

several months it was evident that it was cancer. The workman died October 31, 1962, of Bronchopneumonia due to Bronchogenic carcinoma at the Veterans Hospital in Spokane.

The doctor [Snyder] gave this opinion as to the cause of death. "I think this man died of carcinoma of the lungs, as a result of his occupational employment and exposure to the irritating hazardous fumes, over a period of time in his work at Dawn Mining Company, climaxed probably by an almost fatal exposure to them on the night, or the day, or the late evening of March 28, 1960, the same fumes."

However, Dr. Alexander P. Greer, a specialist from Spokane, testified on the basis of facts submitted to him by the Department of Labor and Industries (he had never examined decedent) that the substances which were used by Chalmers on March 28, 1960, were not carcinogenic (cancer causing), and that the exposure to the fumes of such substances would not cause cancer.

The proposed decision and order of the hearing examiner, after outlining the evidence, contains the following language:

This examiner was given the choice of accepting the testimony of a non-specialist, Dr. Snyder, or of a specialist, Dr. Greer, and all other things being equal, chooses to accept the opinion of Dr. Greer that the known substances that the deceased was exposed to while employed by the Dawn Mining Company did not, on a more than likely basis, cause the development of his chest cancer from which he died. The petitioner has not established that Epoxylite is a cancer producing substance *if* he was exposed to it on March 28, 1960. The evidence would indicate that the one massive exposure which Dr. Snyder assumes to be Epoxylite was not that substance but some other unnamed product, which might or might not be carcinogenic. On that ground the petitioner's claim must fail.

In its memorandum decision, the trial court stated:

Dr. Snyder was the attending physician in this case. He knew that prior to the injury that the x-rays of his chest were negative. He was in frequent attendance on the deceased and connected the cancer with the fumes.

As was said in Benedict vs. Department of Labor and Industries, 63 (Wash.2d) 15, "The answer is to be found in the field of expert testimony."

Like in the Benedict case, Dr. Greer called by the Department never saw the workman and stated opinions based entirely on hypothetical questions. This court cannot understand why the Examiner and the Board accepted his testimony and rejected Dr. Snyder's.

■ It is settled in this state that, in this type of cases, special consideration should be given to the opinion of the attending physician. *Groff v. Department of Labor & Indus.*, 65 Wn.2d 35, 395 P.2d 633 (1964); *Spalding v. Department of Labor & Indus.*, 29 Wn.2d 115, 186 P.2d 76 (1947); *Seattle-Tacoma Shipbuilding Co. v. Department of Labor & Indus.*, 26 Wn.2d 233, 173 P.2d 786 (1946).

However, the testimony of the treating physician is not conclusive. As we noted in the *Groff* case, *supra* at 45:

We are not saying that the trier of the facts should believe the testimony of the treating physician; the trier of the facts determines whom it will believe; . . . .

In the present case, the treating physician, Dr. Snyder, based his opinion largely, if not entirely, upon his information that the compound used by decedent when he suffered his near fatal exposure on March 28, 1960, was a compound known as Epoxylite. On cross-examination, Dr. Snyder testified that:

Q. Doctor, getting back to the fumes you rely on in your opinion, what again are the fumes you are talking about? A. The fumes Mr. Chalmers worked with in his work in the vats. Q. Which ones are they? A. The only thing I know is what I have been told, that they are a form of Epoxylite, or an Epoxylite catalyst, that contains, among others, methylisobutyl, ketonebutyl alcohol, b-u-t-y-l alcohol, and zynene (phonetic), x-y-n-e-n-e. Q. You went to some chemical book and looked up the definition of Epoxylite? A. Right.[2]

[2]According to the deposition of Kris Ottman Neville, research director for the Epoxylite Corporation of El Monte, California, the chemical formulation of the Epoxylite compound which was, in fact, later used by Dawn Mining Company, was as follows: "ERL 2400 (Union carbide Plastics Co.) chemically, the diglycidyl ether of bisphenol A (Mo.

Dr. Snyder further testified that:

Q. You place some emphasis on the fact that he developed dermatitis on some occasions from the Epoxylite? A. Right. Q. And you feel that because a person is allergic to a particular chemical substance, that such a substance is a causative agent in cancer? A. I wouldn't say it like that. I would say that if the exposure of the substance to the skin would cause that much reaction, it would cause a much greater reaction for the mucous membranes of the respiratory system. Q. We have to know, too, what degree he was inhaling the fumes, would we not, and how much, and what degree of exposure? A. I think that is a fair statement. Over his period of employment since March 28, 1960, he inhaled enough that night that he almost died. Q. That fact is important in your opinion here? A. Extremely important. Q. Were it not for what you call a severe, almost fatal, exposure, if it were not for that, would your opinion be different in this case, do you think, doctor? A. If he hadn't had that exposure he might be alive today, that exposure of March 28, 1960. It is really important. I think it is a link in the chain of exposure over a period of time.

Lyle Strong, an employee of Dawn Mining Company, testified that, to his knowledge, the company did not begin using Epoxylite until late 1960 or early 1961. He testified definitely that Chalmers was not using Epoxylite or Epoxylite compound in the tank on the day of the near fatal exposure, March 28, 1960. The compound then used was identified by Strong as N-29 cold bond compound.

The trial court stated, in its memorandum decision, that:

There is a conflict in the testimony as to whether the sealing product being used at that time was Epoxylite or not, but *the Court regards this as immaterial.* Dr. Snyder testified that he understood the product was Epoxylite but, of course, this is only hearsay. (Italics ours.)

In our view, this factor is highly material. The treating physician, Dr. Snyder, based his opinion on the apparently erroneous information that the fumes causing decedent's

weight approx 380) (Parts by weight 100) Sierra Talc (cosmetic grade) (Parts by weight 95) Asbestos Floats (Parts by weight 4) Dispersion of 40% iron oxide and 60% ERL 2400 (Pbw o.5)."

accident on March 28, 1960, were from Epoxylite or Epoxylite catalyst, and on erroneous data concerning the chemical composition of Epoxylite. It was assumed, without substantial evidentiary support, that the compound causing the contact dermatitis on March 28, 1961, and thereafter, was the same compound involved in the accident of March 28, 1960.

An expert opinion, propounded in response to a hypothetical question, may not validly be based on assumed facts and situations not included in the hypothetical question and as to which there is no supporting evidence. *Sawyer v. Department of Labor & Indus.*, 48 Wn.2d 761, 296 P.2d 706 (1956).

█ Similarly, the doctor's opinion, founded on erroneous factual data which is lacking in evidentiary support, and, in fact, is contradicted by substantial evidence, cannot be said to be of sufficient probative value to establish a causal relationship between the injury sustained by decedent and his subsequent death. The fact that the doctor was the treating physician is insufficient to overcome the defect.

We conclude that the trial court was in error in reversing the decision of the board on the ground that the board should have accepted the testimony of the treating physician rather than that of the specialist, Dr. Greer.

We further note that Dr. Snyder testified, on cross-examination, as follows:

Q. Is it your understanding he was using this Epoxylite at that time [referring to March 28, 1960]? A. That is what he told me, he was working in the vat, whatever his work is, to paint and line this vat. Q. Did he tell you he was using Epoxylite? A. I don't know that he specifically named Epoxylite, because I don't think he was entirely familiar with what the substance was personally, but I found out through some of your officials. Q. Are you saying you found out he was using that at the time. A. That is my impression. Q. All right. Go ahead. I didn't mean to interrupt. A. He came out of this accident quite well on the surface of things. He wasn't hospitalized too long, and wasn't off duty too long, but later on in March of 1961, he was again exposed to this substance

and he developed a rather severe dermatitis, which to me indicates this man certainly was sensitive to the substance that caused the dermatitis, and undoubtedly the inhaling of these fumes over a period of time, and particularly in as serious an accident as the March 28, 1960, could very well have set up an irritative process throughout his entire lungs effecting the bronchial trees and air sacs, that they eventually developed into a malignancy. Q. Aren't you just talking in terms of possibilities? A. Sure. Anybody that talks about this case talks about possibilities. Q. You are talking about possibilities? A. No one can prove this man did not die of carcinoma as a result of his occupation. They can have an opinion, but they can't prove it. Q. On the other hand, no one can prove he did?

■ In *Jackson v. Department of Labor & Indus.*, 54 Wn.2d 643, 343 P.2d 1033 (1959), we said, at 649:

In *Stampas v. Department of Labor & Industries, supra* [38 Wn.2d 48, 227 P.2d 739 (1951)], p. 51, this court said:

". . . Medical testimony that there is a *possibility* of a causal relation is not sufficient to establish causation. It must be made to appear that the injury *probably* caused the disability. *Boyer v. Department of Labor & Industries,* 160 Wash. 557, 295 Pac. 737; *Seattle-Tacoma Shipbuilding Co. v. Department of Labor & Industries,* 26 Wn. (2d) 233, 173 P. (2d) 786."

We are of the opinion that Dr. Snyder's testimony, founded as it was on an erroneous factual basis, and asserting only possibilities, was insufficient to establish a causal relationship between Mr. Chalmer's exposure to bonding compound fumes on March 28, 1960, and the carcinoma which caused his death.

RCW 51.52.115 provides, in part, that:

In all court proceedings under or pursuant to this title the findings and decision of the board shall be prima facie correct and the burden of proof shall be upon the party attacking the same.

In *Allison v. Department of Labor & Indus.*, 66 Wn.2d 263, 268, 401 P.2d 982 (1965), we said:

In this context, "prima facie" means that there is a presumption on appeal that the findings and decision of

the board, based upon the facts presented to it, are correct until the trier of fact finds from a fair preponderance of the evidence that such findings and decision of the board are incorrect. It must be a preponderance of the credible evidence. If the trier of fact finds the evidence to be equally balanced then the findings of the board must stand. *Groff v. Department of Labor & Indus.,* 65 Wn.2d 35, 395 P.2d 633; *Sumerlin v. Department of Labor & Indus.,* 8 Wn.2d 43, 111 P.2d 603; *McLaren v. Department of Labor & Indus.,* 6 Wn.2d 164, 107 P.2d 230; *Alfredson v. Department of Labor & Indus.,* 5 Wn.2d 648, 105 P.2d 37.

■ The burden is upon the party attacking the findings and decision of the board to establish the incorrectness thereof by a preponderance of the evidence. *LaLone v. Department of Labor & Indus.,* 3 Wn.2d 191, 100 P.2d 26 (1940); *Stampas v. Department of Labor & Indus.,* 38 Wn.2d 48, 227 P.2d 739 (1951).

We hold that the burden was not met by respondent in this case.

The decision of the trial court is, therefore, reversed and the case is remanded with directions to enter an order reinstating the findings and decision of the board.

HILL, HAMILTON, and NEILL, JJ., and OTT, J. Pro Tem., concur.