# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

|  |  |  |
|---|---|---|
| JOHN W. PALM, | ) | No. 71816-9-I |
|  | ) |  |
| Appellant, | ) | DIVISION ONE |
|  | ) |  |
| v. | ) |  |
|  | ) |  |
| STATE OF WASHINGTON, | ) | UNPUBLISHED |
| DEPARTMENT OF LABOR AND | ) |  |
| INDUSTRIES, | ) | FILED: July 13, 2015 |
|  | ) |  |
| Respondent. | ) |  |
|  | ) |  |

Cox, J. — John Palm appeals the denial of his worker's compensation claim. The trial court did not abuse its discretion in reopening jury selection to permit the Department of Labor and Industries to exercise a peremptory challenge. The court properly instructed the jury and did not abuse its discretion in rejecting an instruction proposed by Palm. And the court properly exercised its discretion in denying the post-verdict motion for judgment as a matter of law. We affirm.

Palm sought worker's compensation benefits for medical conditions in his shoulders, back, and left knee. Both the Department and the Board of Industrial Insurance Appeals (BIIA) denied his claim, concluding that he did not suffer an "occupational disease."

On appeal to the superior court, a trial de novo ensued. During voir dire, one prospective juror stated that Palm was a "close acquaintance." The court questioned the juror, and she stated that she believed that she could be fair. Neither party exercised a peremptory challenge to this juror prior to the impaneling and swearing of the jury.

But just after the jury was sworn in, the Department notified the court that it had intended to exercise a peremptory challenge to the juror who had indicated she was Palm's close acquaintance. The Department had not done so prior to impanelling the jury because it misunderstood the local jury selection process for the county. Over Palm's objection, the court reopened the jury selection process to allow the Department to exercise a peremptory challenge to the juror. The court also granted Palm an additional peremptory challenge.

At the close of evidence, Palm asked the court to instruct the jury that "[a] worker is taken as he is, with all his pre-existing frailties and bodily infirmities."[1] The trial court declined to provide this instruction, stating that Palm could make his argument with the other jury instructions in the case.

After deliberations, the jury found that the BIIA decision to deny Palm's claim was correct. Following the verdict, Palm moved for judgment as a matter of law, arguing that the Department had failed to provide sufficient evidence that his injuries were not an occupational disease. The court denied this motion.

Palm appeals.

---

[1] Clerk's Papers at 333.

2

## JURY SELECTION

Palm argues that he is entitled to a new trial because the court reopened jury selection to permit the Department to exercise a peremptory challenge after impaneling and swearing in the initial jury. We disagree.

Parties have the right to trial by an impartial jury. But parties "ha[ve] no right to be tried by a particular juror or by a particular jury."[2]

If the jury selection process substantially complied with the relevant statutes, a party must show prejudice to obtain a new trial.[3]

This court reviews for abuse of discretion a trial court's decision to reopen jury selection after the jury has been impaneled and sworn.[4]

Here, the court did not abuse its discretion by allowing the Department to use a peremptory challenge after the initial jury had been sworn and impaneled.

The court detailed, in writing, the circumstances underlying its decision:

> An apparent misunderstanding of local jury selection procedures resulted in this civil jury having been sworn at a time when [the Department's] counsel believed that the court was still accepting peremptory challenges. In order to afford both parties a fair trial, the Court deemed it appropriate to allow [the Department] to exercise its challenge and the court further granted an additional peremptory challenge to each party.
>
> [The Department's] counsel notified the Court of the misunderstanding immediately: no argument had been made, no testimony had been taken, and the jury pool was still present. The Court determined that there was no actual or potential prejudice to either party, and that the right to exercise peremptory challenges

---

[2] State v. Gentry, 125 Wn.2d 570, 615, 888 P.2d 1105 (1995).

[3] State v. Tingdale, 117 Wn.2d 595, 600, 817 P.2d 850 (1991).

[4] State v. Williamson, 100 Wn. App. 248, 253, 996 P.2d 1097 (2000).

was more important than the formality of the timing of the oath.[5]

The court also noted on the record that it "t[ook] responsibility" for the Department's counsel's misunderstanding of the jury selection process because the court had not explained the procedure.

This ruling plainly demonstrates that the court did not abuse its discretion by reopening the jury selection process. Palm does not dispute that there was a misunderstanding that required a remedy. The parties had not made any argument or presented any evidence when the court reopened jury selection. And the remainder of the venire was still present from which to draw the replacement juror.

Significantly, as the court stated in its written decision, Palm cannot show prejudice. During voir dire, Palm had the opportunity to question the juror who joined the panel after the Department used its peremptory challenge. Palm also received an additional peremptory challenge when the court reopened jury selection.

State v. Williamson also supports our conclusion.[6] In that case, after the first witness had begun to testify, a juror informed the court that she knew a different witness in the case.[7] The court denied a challenge for cause, but allowed the State to use a peremptory challenge.[8] Division Three of this court

---

[5] Clerk's Papers at 403.

[6] 100 Wn. App. 248, 996 P.2d 1097 (2000).

[7] Id. at 252.

[8] Id.

4

held that it was not an abuse of discretion for the court to reopen voir dire in those circumstances.[9]

Comparing the present case to Williamson makes it even clearer that the court did not abuse its discretion. Unlike in Williamson, "[N]o argument had been made [and] no testimony had been taken."[10] Additionally, the court here granted Palm an additional peremptory challenge when it reopened voir dire.

Thus, the court did not abuse its discretion by reopening voir dire.

Palm argues that the procedure in this case created a non-random jury. This makes no sense.

The mere fact that the Department used a peremptory challenge when jury selection was reopened, rather than before, does not affect the randomness of the jury drawn from this venire. The replacement juror came from the same venire as the original juror. And nothing else suggests a lack of randomness in the ultimate selection process.

Palm also argues that this court should presume prejudice. He is mistaken.

He cites Brady v. Fibreboard Corp. for this proposition.[11] That case states that courts presume prejudice if "statutory jury selection procedures are *materially* violated."[12] Here, Palm fails to identify anything that expressly or

---

[9] Id. at 253-55.

[10] Clerk's Papers at 403.

[11] 71 Wn. App. 280, 857 P.2d 1094 (1993).

[12] Id. at 284 (emphasis added).

5

impliedly prohibits reopening jury selection after administering the oath under the circumstances of this case. Thus, there is no material violation of the statutory jury selection process. Rather, the court substantially complied with this process. For these reasons, this argument is unpersuasive.

## JURY INSTRUCTION

Palm argues that the court abused its discretion by failing to give a jury instruction he requested. Because the jury instructions given were sufficient, the court properly exercised its discretion by rejecting the proposed instruction.

This court reviews legal errors in jury instructions de novo.[13] But we "review a trial court's choice of jury instructions for abuse of discretion."[14] "The number of instructions necessary to present a theory of a case is within the trial court's discretion."[15] Whether to give a particular instruction is also within the trial court's discretion.[16]

"Jury instructions are generally sufficient if they are supported by the evidence, allow each party to argue its theory of the case, and when read as a whole, properly inform the trier of fact of the applicable law."[17]

Here, Palm asked for the court to instruct the jury that:

> A worker is taken as he is, with all his pre-existing frailties and bodily infirmities. The provisions of the workmen's

---

[13] Fergen v. Sestero, 182 Wn.2d 794, 803, 346 P.3d 708 (2015).

[14] State v. Douglas, 128 Wn. App. 555, 561, 116 P.3d 1012 (2005).

[15] Tennant v. Roys, 44 Wn. App. 305, 308, 722 P.2d 848 (1986).

[16] Fergen, 182 Wn.2d at 802.

[17] Id. at 803.

compensation act are not limited in their benefits to such persons only as approximate physical perfection, for few, if any, workers are completely free from latent infirmities originating either in disease or in some congenital abnormality.[18]

The trial court noted that this instruction correctly stated the law. But the court declined to give this instruction because another instruction—the proximate cause instruction—allowed Palm to make the same argument. That other instruction stated:

> The term "proximate cause" means a cause which in a direct sequence produces the condition complained of and without which such condition would not have happened.
>
> There may be one or more proximate causes of a condition. For a worker to recover benefits under the Industrial Insurance Act, the work conditions must be a proximate cause of the alleged condition for which entitlement to benefits is sought. *The law does not require that the work conditions be the sole proximate cause of such condition.*[19]

This court has noted that this "multiple proximate cause" language "'is but another way of stating the fundamental principle that, for disability assessment purposes, a workman is to be taken as he is, with all his preexisting frailties and bodily infirmities.'"[20]

The proximate cause instruction allowed Palm to argue his theory of the case. And he did so. In closing argument, Palm argued that the jury had to accept Palm with his infirmities:

---

[18] Clerk's Papers at 333.

[19] Clerk's Papers at 448 (emphasis added).

[20] City of Bremerton v. Shreeve, 55 Wn. App. 334, 340, 777 P.2d 568 (1989) (quoting Wendt v. Dep't of Labor and Indus., 18 Wn. App. 674, 682-83, 571 P.2d 229 (1977)).

The, um, next thing I want to talk about, there is, you know, this is all being blamed on Mr. Palm being old and heavy. You will recall that the instructions indicate that the work conditions must be "a" cause of his medical problems. They don't have to be the sole cause or the only cause or the major contributing cause. They have to be a cause and that's because we take our workers as they come. Some workers are heavy. Some workers are strong. Some workers are weak. Some workers are like he-man. They all get covered no matter what their situation is.[21]

Thus, Palm was able to argue his theory of the case with the court's instructions to the jury. Accordingly, the court did not abuse its discretion by declining to give Palm's proposed instruction.

Palm argues that the proximate cause instruction did not allow him to argue his theory of the case. He argues that the court's instructions, which instructed the jury to disregard arguments not supported by the law, allowed the jury to ignore his argument as the "mere opinion of counsel."

This record shows otherwise. As we discussed earlier in this opinion, the proximate cause instruction supported Palm's argument, and he was able to use it to frame his argument. This proximate cause instruction was not the "mere opinion of counsel" that the jury could ignore.

## JUDGMENT AS A MATTER OF LAW

Palm argues that he was entitled to judgment as a matter of law. Specifically, he argues that substantial evidence does not support the jury's verdict. We disagree.

---

[21] Report of Proceedings (June 13, 2013) at 219-20.

In an appeal from a BIIA decision, the superior court reviews the decision de novo.[22] The party challenging the BIIA decision has the burden of establishing that the BIIA's findings are incorrect.[23]

We review a superior court's decision on a BIIA appeal under the usual civil standards.[24] When reviewing the denial of a motion for judgment as a matter of law, this court applies the same standard as the superior court.[25] "The standard on a motion for judgment as a matter of law mirrors that of summary judgment."[26] Granting judgment is appropriate if, "viewing the evidence in the light most favorable to the nonmoving party, substantial evidence exists to support the verdict for the nonmoving party."[27]

A worker with an "occupational disease" is entitled to worker's compensation benefits.[28] An "occupational disease" is one that "arises naturally

---

[22] Yuchasz v. Dep't of Labor and Indus., 183 Wn. App. 879, 886, 335 P.3d 998 (2014).

[23] Cochran Elec. Co. v. Mahoney, 129 Wn. App. 687, 692, 121 P.3d 747 (2005).

[24] Malang v. Dep't of Labor and Indus., 139 Wn. App. 677, 683, 162 P.3d 450 (2007).

[25] Grove v. PeaceHealth St. Joseph Hosp., 182 Wn.2d 136, 143, 341 P.3d 261 (2014).

[26] Washburn v. City of Fed. Way, 178 Wn.2d 732, 752-53, 310 P.3d 1275 (2013).

[27] Grove, 182 Wn.2d. at 143.

[28] RCW 51.32.180.

and proximately out of employment . . . ."[29]

Here, the court properly denied Palm's post-verdict motion for judgment as a matter of law. That is because substantial evidence supported the jury's verdict.

In this case, the question before the jury was whether the BIIA had correctly determined that Palm did not have an occupational disease.

Dr. David Karges, one of the Department's expert witnesses, testified that Palm's medical conditions "were primarily the result of increase in age, living, and exogenous obesity, and deconditioning, too."[30] He further testified that "the main factor, by far the only proven factor [Palm] ha[d] that really effected [sic] [his] knees, was his longstanding overweight problem."[31]

Similarly, Dr. Gary Bergman testified that age was "[t]he primary cause" of Palm's shoulder injuries.[32] He also testified that the condition of Palm's shoulders was "very typical" of someone Palm's age.[33]

This testimony from two doctors was substantial evidence supporting the jury's verdict that Palm's work did not cause his medical conditions. Thus, there was no occupational disease that required payment of worker's compensation benefits.

---

[29] RCW 51.08.140.

[30] Clerk's Papers at 278.

[31] Id. at 283.

[32] Id. at 250.

[33] Id. at 253.

Further, although neither party raised this argument, Palm's motion for a judgment as a matter of law was untimely. Under CR 50(a)(2), "[a] motion for judgment as a matter of law may be made at any time before submission of the case to the jury." If the motion is not granted, the moving party "may renew its request for judgment as a matter of law by filing a motion no later than 10 days after entry of judgment."[34]

Here, Palm first filed a motion for judgment as a matter of law on June 21, eight days after the jury returned its verdict. Palm has not pointed to anything in the record indicating that this motion was a renewal of a motion made before the case was submitted to the jury. And our review of this record confirms that his motion was not a renewal. Thus, the motion was untimely.

Palm argues that "no fair-minded person could have decided that [he] did not suffer occupational diseases."[35] This argument is merely a disagreement with the jury's verdict.

Palm uses two portions of the record to support this argument. First, Palm points to his cross-examination of the doctors who testified for the Department. His cross-examination revealed that Dr. Karges was unaware of the specifics of Palm's job duties. And Dr. Bergman testified that he could not recall Palm telling him about the specifics of his work.

Second, Palm points to Dr. Karges's use of an incorrect definition of "occupational disease." Dr. Karges testified that "from the medical standpoint,

---

[34] CR 50(b).

[35] Brief of Appellant at 26.

when I think about occupational disease, that implies a type of work that usually has one or two motions that are extremely repetitive."[36] While, under the law, an "occupational disease" is one that "arises naturally and proximately out of employment."[37]

Neither of these alleged shortcomings in the testimony of these witnesses is sufficient to show there was not substantial evidence to support the jury's verdict. In closing, Palm argued to the jury that it should not rely on the Department's expert witnesses for the reasons we previously identified. But it is clear that the jury rejected these arguments. We do not, on appeal, reweigh evidence before the finder of fact where there is substantial evidence to support the verdict. There is such evidence here. The trial court properly denied this post-verdict motion.

Palm argues that his case resembles Chalmers v. Department of Labor and Industries.[38] But that case is distinguishable.

In Chalmers, an expert witness "based his opinion largely, if not entirely, upon his information that the compound used by decedent when he suffered his near fatal exposure on March 28, 1960, was a compound known as Epoxylite."[39] But the decedent's employer did not use Epoxylite at the time of the accident.[40]

---

[36] Clerk's Papers at 282.

[37] RCW 51.08.140.

[38] 72 Wn.2d 595, 434 P.2d 720 (1967).

[39] Id. at 599.

[40] Id. at 600.

The supreme court held that because the expert's opinion was "founded on erroneous factual data" it was insufficient to establish the cause of the decedent's death.[41] Thus, the defendant was entitled to judgment as a matter of law.

Chalmers does not resemble the present case. In Chalmers, the expert noted that the alleged exposure to Epoxylite was "[e]xtremely important" to his opinion.[42] Here, Palm has not shown that a key assumption underlying the experts' opinions was false. Dr. Karges testified that he believed Palm had worked as an electrician for approximately 15 or 16 years, when he had actually work as an electrician for over 30 years. But nothing in Dr. Karges's testimony established that the duration of Palm's work was important to his opinion.

Similarly, while Dr. Karges was unaware of some details of Palm's work duties, on redirect examination he testified that his opinion had not changed. Dr. Bergman also testified that his opinion had not changed after Palm had cross-examined him on the details of Palm's work duties. Thus, because the experts' opinions did not depend on erroneous factual data, Chalmers is distinguishable.

## ATTORNEY FEES

Palm seeks an award of attorney fees on appeal. Because he is not entitled to an award, we deny this request.

---

[41] Id. at 601.

[42] Id. at 600.

13

Under RCW 51.52.130, a worker who obtains reversal of a BIIA decision on appeal is entitled to an award of attorney fees. Because we do not reverse the BIIA decision, Palm is not entitled to attorney fees.

We affirm the judgment affirming the BIIA decision that Palm does not suffer from an occupational disease.

_Cox, J._

WE CONCUR:

_Becker, J._