(No. 5533. July 8, 1930.)

STEVE DELICH, Appellant, v. LAFFERTY SHINGLE MILL CO., Employer, and STATE INSURANCE FUND, Surety, Respondents.

[290 Pac. 204.]

E. V. Boughton, for Appellant.

Scatterday & Stone, for Respondents.

BUDGE, J.—On September 15, 1928, claimant, Steve Delich, had been in the employ of the Lafferty Shingle Mill Company, as a night watchman, for about three months. Twenty years before that his left foot had been amputated approximately two inches in front of the point where the leg joins the foot. As a result of this amputation his foot had assumed an equinus position, that is, it had gradually angulated down in relation to the leg. He had been able to use the foot and leg and engage in ordinary manual labor of a lighter nature. On the night of September 15, 1928, while in the performance of his duties as a night watchman, a shingle-bolt, weighing approximately 100 pounds, fell from a height of two or three feet and struck claimant's left foot, temporarily disabling him for work. Following consultations with a physician and surgeon of his own choosing and treatments to alleviate the condition of the foot due to the bruising it had received, claimant had his foot amputated, as advised by his physician and surgeon.

Through successive hearings before the Industrial Accident Board and district court, claimant sought an award of compensation for disability resulting from the last amputation, contending it was made necessary and grew out of the injury to his foot by the falling shingle-bolt. The claim was disallowed, and the proceeding is here for review on

appeal. The two material questions for consideration are (1) whether the evidence sustains the findings and conclusions of the Industrial Accident Board that the later amputation was on account of the condition of claimant's foot resulting from the first amputation twenty years before, and that it was not necessary on account of any condition of the foot brought about by its having been struck by the shingle-bolt on September 15, 1928, *ergo,* claimant was not entitled to compensation for disability caused by the second amputation; (2) whether on application for review before the Industrial Accident Board the proceeding should have been reopened for the purpose of allowing claimant to introduce additional testimony tending to dispute that given by the physician and surgeon who treated claimant's foot and performed the amputation operation, in regard to the foot having assumed an equinus position and that the second amputation was not necessary on account of any condition of the foot brought about by having been struck with the shingle-bolt.

From the record made of his examination of claimant's foot and the statements of the claimant after the latter had visited the doctor's office some few days subsequent to the bruising of the foot, the doctor testified the foot was in an equinus position, the end of the stump being very tender. There was but slight evidence of the recent injury at the time the claimant's foot was examined. The doctor noted that such type of stump is not satisfactory and that there should be an amputation through the lower leg. He advised heating the foot and raising it to let the soreness wear out, and then to perform an operation. From the doctor's viewpoint the bruising of the foot had no particular connection with the principal difficulty, and the amputation which he advised was not at all on account of any acute condition of the foot due to the bruising, but to the general shape of the old amputation stump. When claimant was next examined by the doctor in preparation for the amputation decided upon, all evidence of the recent injury had disappeared. When the claimant asked the doctor about

556

securing compensation the doctor frankly advised him that he could not possibly honestly help him to get the expenses for the amputation and subsequent care. The doctor's testimony throughout indicates fairness and impartiality, his qualifications being unquestioned, and this court is in no position to disturb the findings of the Industrial Accident Board, affirmed by the district court, based upon the testimony of a man who, by his intimate contact with claimant and first-hand knowledge of his case, was eminently qualified to testify to the true situation. It was exclusively the province of the Industrial Accident Board to determine the facts, and we may not disturb its findings, based upon sufficient evidence to sustain them. (*McNeil v. Panhandle Lumber Co.*, 34 Ida. 773, 203 Pac. 1068; *Butler v. Anaconda Copper Min. Co.*, 46 Ida. 331, 268 Pac. 6; *Burchett v. Anaconda Copper Min. Co.*, 48 Ida. 524, 283 Pac. 515.) The same rule maintains where there is a conflict in the evidence.

It is quite evident from the showing made by claimant on application for review that the Industrial Accident Board considered the nature of the additional testimony sought to be introduced by claimant would not have any material bearing on the merits of the decision arrived at by the member of the board before whom the proceeding was heard. The witness desired to be produced had no connection with the case and his testimony would have been entirely hypothetical, as appears from the application for review. The denial of the application shows the Industrial Accident Board accepted as credible the testimony of the doctor who treated claimant and performed the operation, and there is no reason for believing a different conclusion would have been reached upon the introduction of the additional testimony. Having the power to grant or deny the application for review upon the exercise of its judgment as to the sufficiency of the showing therefor, the Industrial Accident Board must be held to have abused its discretion before this court would be warranted in setting aside the ruling. In the face of the clear and posi-

tive testimony adduced at the hearing in regard to the cause of the amputation of claimant's foot, compared with the nature of the additional testimony sought to be introduced, we cannot say the Industrial Accident Board acted arbitrarily or without semblance of a wholesome judgment in denying the application for review. In this view it is unnecessary to pass upon the question of reasonable diligence by the claimant in an effort to produce the additional testimony at the time of the hearing, but it may be observed that the record shows no application for a continuance at any stage of the proceedings to allow claimant to obtain any such evidence.

The judgment must be affirmed, and it is so ordered. Costs to respondents.

Givens, C. J., Lee and Varian, JJ., and Johnson, District Judge, concur.