370 P.2d 191

John S. HAMILTON, Employee, Plaintiff-Respondent,

v.

BOISE CASCADE CORPORATION, formerly Boise Payette Lumber Company, Employer, and Workmen's Compensation Exchange, Surety, Defendants-Appellants.

No. 9030.

Supreme Court of Idaho.

March 27, 1962.

Richards, Haga & Eberle, Dale O. Morgan, Boise, for appellants.

William M. Smith, Boise, for respondent.

McQUADE, Justice.

This appeal was taken from an award by the Industrial Accident Board for expenses of nursing home, hospitalization, drugs, and medical care to a totally and permanently disabled claimant.

John S. Hamilton is claimant and respondent herein. On March 17, 1954, the claimant, then 72 years of age, suffered a personal injury caused by an accident arising out of and in the course of his employment by Boise Payette Lumber Company (now Boise Cascade Corporation). About noon on the day of the accident, claimant slipped while on a ladder and fell to the floor, injuring his right hip.

His injury was diagnosed as a badly fractured head of the femur. The head and neck of the femur were removed, and a metal prosthesis substituted. Subsequently thereto, claimant had numerous complications, never being physically rehabilitated. He has been under treatment or medical supervision of various physicians since the accident.

On December sixth, 1954, he again fell, reinjuring the hip. Evidence of advanced arthritic condition in the lower lumbar spine complicated the remainder of the treatment and rehabilitation.

While convalescing in 1955 at his home in Emmett, Idaho, claimant employed male help. During April of 1955, claimant moved to Boise, where he took up residence in a caretaking home at $90 per month. October, 1956, he moved to Homewood Nursing Home, where the rate was $160 a month until October, 1957, when the rate was increased to $175. On June 9, 1960, he was taken to the Elks Rehabilitation Center in Boise, and was there

situated when the Industrial Accident Board held its hearing.

Medical treatment and prescriptions for pain pills were continued from the injury date to the hearing date.

About July 1, 1958, a physician was called to examine swelling and drainage from the injured hip. An abscess over the right thigh was thereafter excised. On September 23, 1958, the prothesis used to treat the fracture was removed. Further surgery was not recommended because of claimant's age and general condition.

After removal of the femur head and without prosthesis, there was a "piston-like action" by the femur when the claimant walked. Claimant suffered physical distress when in an upright position and when attempting to walk with assistance of crutches or a cane.

Claimant was confined to bed for a lengthy period before his removal to the Elks Rehabilitation Center. Since that time, he has been able to dress, feed himself, get into and out of a wheel chair, take a shower, and take care of his toilet needs.

Claimant requested an award by the Industrial Accident Board for hospital care, at the Elks Rehabilitation Center, drugs, ambulance, prosthesis, and physicians' fees, in the amount of $1,826.16. An award was also requested for nursing home care.

An award was made by the Board to claimant for medical, surgical, and kindred expenses in the sum of $1,826.16; $1,948.-80 for nursing care at Homewood Nursing Home, and $636 for nursing care at the Elks Rehabilitation Center from August 1 to December 1, 1960, a period of four months. In arriving at amounts awarded for nursing home care, the Industrial Accident Board reduced monthly charges made by deducting therefrom the value of board and room. Respondent did not appeal from any portion of the award.

Appellants assign error to the award, and in support of this claim of error contend claimant made no demand upon appellants for medical care, hospitalization, drugs and nursing home care between September 1, 1959, and December 7, 1960.

Appellants further urge they did not refuse medical service demanded by claimant.

Reversal of the award is also sought by appellants on the theory that claimant failed by competent evidence to show he reasonably required domiciliary nursing care during the period July 1, 1958, to December, 1960, by reason of the injury upon which this claim was founded. In this regard, appellants aver such nursing care was furnished as a convenience and because of claimant's physical and mental condition not related to the injury.

Appellants also urge the award for domiciliary care was error because it was not reasonable medical service for a compensable injury.

Claimant was treated for his injury by Emmett doctors holding a contract with appellant employer. Medical services were rendered for claimant in Boise, Idaho, at the contract doctors' request, and with presumptive knowledge of the employer. Medical services rendered to claimant were in a town situated away from the contract physicians. The employer and the contract doctors knowing medical treatment to be necessary and not assuming responsibility to provide it for claimant, he was thereby entitled to provide it himself. Pacific Elec. Ry. Co. v. Industrial Accident Commission, 96 Cal. App.2d 651, 216 P.2d 135. There is ample evidence to sustain the Board's finding that claimant required special domiciliary care after July 1, 1958.

Appellants have strongly urged a reversal through a facts analysis to the end that medical service as demanded by claimant was not refused. Claimant went to appellants' physicians in Emmett, Idaho, and was taken by them to Boise for assistance of another doctor. Upon claimant's moving his abode to Boise, treatment as offered by appellants was no longer available, and he was justified in seeking care where he lived. Johnston v. A. C. White Lumber Co., 37 Idaho 617, 217 P. 979.

Appellants' reasoning that claimant should not have been awarded nursing care because of his physical and mental condition not related to the compensable injury is predicated upon the evidence of an advanced arthritic condition in the lower lumbar spine and senility due to his advancing age. In relation thereto it was found by the Board:

"While Hamilton's [claimant's] age with its progressive physical and mental deterioration is a contributing factor, it is found that his flail hip, with its continuing pain and present necessity for a wheelchair, is the principal contributor to his need for continuous nursing care."

The Board's finding in this regard is clearly supported by evidence in the record.

The Board concluded nursing service is included within provisions of I.C. sec. 72–307:

"The employer shall provide for an injured employee such reasonable medical, surgical or other attendance or treatment, nurse and hospital service, medicine, crutches and apparatus, as may be required or be requested by the employee immediately after an injury; and for a reasonable time thereafter. * * *"

Appellants question correctness of the Board's determination in this respect.

They suggest nursing care must be in conjunction with a physician's attendance, which is amplified by referral to a physician's care or treatment in a hospital as against occasional observation and treatment other than in a hospital.

A pertinent evaluation of this statutory provision is made in Burch v. Potlatch Forests, Inc., 82 Idaho 323, 353 P.2d 1076:

> "* * * It must be borne in mind that said section (72–307) does not attempt to specify every kind of treatment which shall be provided—it does provide for 'other attendance or treatment' (emphasis supplied). In common parlance and often in the law the word 'treatment' is a broad term and is employed to indicate all steps taken in order to effect a cure of an injury or disease. * * *"

Idaho has not ruled in precise language upon the question presented here, nor, does it seem, has the question been presented squarely elsewhere. Rulings in various courts allowing and disallowing claims for nursing home care have been peremptory and without analysis in relation to statutory authorization. Idaho made mention of this problem in Irvine v. Perry, 78 Idaho 132, 299 P.2d 97:

> "We construe the hospital contract in this case to provide for medicine and medical supplies for a reasonable length of time, but not to provide for home

nursing services. These, not having been contracted for, would remain the statutory responsibility of the employer."

Under a statute similar to I.C. sec. 72–307, Florida allowed nursing home care which was provided in the home of the claimant. Cook v. Georgia Grocery, Inc., Fla., 125 So.2d 837.

In Southern Surety Co. v. Beaird (Tex. Civ.App.), 235 S.W. 240, Texas reviewed the problem under what appears to be a more restrictive statute:

> "By the third assignment it is insisted that the special exception to the answer should have been sustained, as the character of the services rendered for which compensation is sought are not hospital services within the contemplation of the Workman's Compensation Act, and do not include board, room, rent, fuel etc., furnished in a private residence.

> "It requires no argument to show that a private residence, technically speaking, is not a hospital. The statute provides for hospital services. The issue is presented as to what is included in hospital services. Appellant insists that 'hospital services' embraces only treatment received in a hospital, and do not include 'hospital care, meals, fuel, light, and other necessaries,' for which the charge of $1 per day is

made. We do not concur in appellant's contention. The expressions used in the statute are:

" 'The employé shall be entitled to the medical aid, hospital services and medicines.' 'Such additional hospital services as are provided in this paragraph shall not be held to include any obligation on the part of the association to pay for medical or surgical services not ordinarily provided by hospitals as a part of their services.' 'Where such medical aid, hospital service or medicines are furnished by a public hospital or other institution, payment thereof shall be made to the proper authorities conducting the same.'

"The statute does not specify the services to be rendered other than as above, and the evidence offered does not show what services are ordinarily furnished by hospitals or other institutions. The articles on hospitals we have examined do not specify the services ordinarily rendered by hospitals. We can, however, imagine the inconvenience and utter lack of what would be expected of a hospital service that did not furnish some care, meals, heat when needed, and artificial light to a totally disabled employé. We think the service should at least be commensurate with the need. * * *"

Another case related to the problem occurred in California in Pacific Elec. Ry. Co. v. Industrial Accident Commission, 96 Cal.App.2d 651, 216 P.2d 135. Therein the Court approved an award for home nursing after the claimant left the hospital:

" * * * Those services consisted of 'regular' nursing care, general housework and cooking. It appears that applicant left the hospital and returned to her home in order to reduce her medical expenses, and that her physician permitted her to return home on the condition that she have someone in her home to care for her. It is true that the services also included housework and cooking for applicant's husband and two sons. The woman's salary was $100 a month. If the applicant had remained in the hospital the expenses for her care would have exceeded the expense incurred at home. The commission was warranted in allowing that sum as a reasonable amount for practical nursing. * * *"

We arrive at the conclusion that domiciliary nursing care is an integral portion of services contemplated by I.C. sec. 72–307 in relation to the facts herein.

■ Appellants argue the Board is in error as to allowance for "pain-killer" medicine. In this respect the Board's finding recites:

" * * * It was admitted that during his stay at Homewood Nursing

Home plaintiff took more drugs than he needed. It is deemed that the amount here allowed represents a reasonable amount of pain-killer medicine * * *."

The Board's determination as to what was reasonable will not be disturbed on appeal where there is ample evidence to sustain such finding.

The order of the Industrial Accident Board is affirmed.

Costs to respondent.

TAYLOR, KNUDSON and McFADDEN, JJ., and SCOGGIN, District Judge, concur.