429 P.2d 390

**Richard J. KIRKBRIDE, Claimant-Appellant,**

**v.**

**DEPARTMENT OF EMPLOYMENT, Defendant-Respondent.**

**No. 9776.**

Supreme Court of Idaho.

June 22, 1967.

Richard J. Kirkbride, pro se.

Frank H. Powell, Boise, for respondent.

TAYLOR, Chief Justice.

Plaintiff (appellant) made application for unemployment benefits for the weeks ending January 23, 1965, January 30, 1965, and February 13, 1965, at the Caldwell office of the department of employment. The claim was denied. The denial was affirmed upon redetermination and, after hearing, the redetermination was affirmed by the appeals examiner. Upon plaintiff's appeal the decision of the appeals examiner was affirmed by order of the industrial accident board. Plaintff brought this appeal from the order of the board.

A hearing was had, May 12, 1965, before the appeals examiner for the District of Columbia, where plaintiff resided at that time. Plaintiff appeared and testified. This testimony and the records of the department of employment, including statements made by plaintiff in his application and reports to the department, constitute the record upon which the decision of the appeals examiner was made, and is the same record now before this court. No testimony was taken by the industrial accident board. In such situation the findings of the board are not binding upon this court. Mandes v. Employment Sec. Agency, 74 Idaho 23, 255 P.2d 1049 (1953). In any case, however, the burden of establishing eligibility for unemployment benefits is upon the claimant whenever his claim is questioned. Boodry v. Eddy Bakeries Company, 88 Idaho 165, 397 P. 2d 256 (1964); Burroughs v. Employment Security Agency, 86 Idaho 412, 387 P.2d 473 (1963).

While in the armed services and while stationed in Hawaii plaintiff received training in data management and photo interpreting, which he now considers his occupation. While in Hawaii he owned a car, which he had with him in that state. From December 14, to December 23, 1964, he was stationed in San Francisco. He was discharged from the Navy on December 14, 1964. His car was to be shipped to him at San Francisco by the Navy. While in San Francisco, he made some attempt to contact potential employers, whose operations were national in scope, and who might have work for him within his occupation, in the state of Idaho.

December 23, 1964, plaintiff left San Francisco for a Christmas trip to the home of his parents in Caldwell, Idaho. His own car not having arrived, plaintiff during his stay in San Francisco, had been using a car belonging to a relative who lived in Yosemite. With her consent he used her car to come to Idaho.

Plaintiff made no effort to obtain employment in Idaho until January 11, 1965, when he commenced efforts "to make contacts in the area relative to employment in the data management field." He testified:

"So I found that though I wanted to work in Idaho, a bit of the say-so concerning various companies would have to be had in San Francisco or even Los Angeles. So, it became apparent to me that in going to get my car I should also extend the trip long enough to get interviewed by the people with hiring authority in those cities."

By telephone communications plaintiff was advised that his car would arrive in San Francisco January 21st or January 25th, 1965. On January 20th he filed his application for unemployment benefits and on the same day left Idaho in his relative's car for the "twofold" purpose of return-

ing the car to its owner and making contacts with potential employers in San Francisco. He arrived in Yosemite by way of Merced at about noon on January 21st. His relative requested him to drive her to her family home in Los Angeles, which he did, leaving Yosemite in the evening of January 21st. He testified that on the 22nd he made several phone calls to IBM and Remington-Rand, seeking appointments for employment interviews for Monday, January 25th. His contacts in Los Angeles were inconclusive and on January 26th he drove his relative back to Yosemite; from there he went to San Francisco by bus. January 27th plaintiff:

"spent the day finding out my car was still in Hawaii, calling back to San Fran IBM, Rem Rand, Crown Zellerbach, Caltype, and other offices while enroute to the Calif. Employment Security Agency in an area outside the central business district on Market Street. I reached the office at 4:15 pm very tired and in a hurry to get to the bus station for a return trip to Idaho. This situation was not understandable to the wonderful little lady who talked to me.

"She wanted to know why I didn't come in the morning at 10:00 a.m. and stand in line like the others did. I told her I was busy finishing a search for my car at that time and was starting to make call backs for interviews. She thought anyone unemployed should have time to stand in line. She wanted [to know] why I did not have time to stay another day. I said I would have to come back anyway in a few weeks and would spend more time looking for a job then. With my car it would be easier to move around the bay area."

The above quoted statement made by plaintiff is taken from his written "request for review." In his sworn testimony covering two weeks ending January 23rd and 30th, he testified:

"Well, I spent the day-and-a-half and almost got permission to fly to Hawaii to find out why my car had not come;

and prior to that time I had spent $15.00 on long distance calls to ascertain whether or not it had departed Hawaii. I was told it did. I went there. It hadn't arrived. I spent several other days making sure of the plans the Defense Department had to get it to me and when it would be there because it was extremely costly. And then I made applications at IBM and Remington-Rand and at Burroughs in San Francisco.

"Q Were these during the—could you tell us whether these were during the week ending the 23rd or the week ending the 30th, these contacts you've mentioned. Or during *both* weeks.

"A No, they were on both weeks. I'm quite sure I had an appointment for a preliminary interview, I should say, with the secretary on Friday, the 22nd, because I believe IBM interviews only on Monday, Wednesday and Friday. Holds preliminary interviews Monday, Wednesday, and Friday. So I know I made contact on the 22nd. And as for that week, did I make employment efforts? Yes, I did. I have to say I made at least one in Idaho and I know I made one in San Francisco on the 22nd, I'm sure."

Elsewhere in his testimony he said he had made about four or five contacts in San Francisco during the week ending January 30th. Plaintiff left San Francisco to return to Idaho on the evening of January 27th and arrived in Caldwell on the 28th.

Upon learning that his car had arrived in San Francisco, plaintiff left Idaho with friends February 5th; he obtained his car on Sunday, February 7th. He testified that while in San Francisco on that occasion he made at least three contacts with prospective employers, with the result that interviews were either postponed or background training, which he did not have, was desired. He left San Francisco and came back to Idaho on February 9, 1965, and presented himself at the Caldwell office of the department of employment on February 10, 1965.

The Caldwell office ruled that plaintiff was unavailable for work during the portions of weeks involved when he was traveling to and from Yosemite, Los Angeles, and San Francisco. Plaintiff took issue with the ruling contending that there should be a "rule of reasonableness," which would provide an "exception" to the law" in his particular circumstances. A hearing was scheduled for March 23, 1965. However, on March 15, 1965, plaintiff left Idaho to seek work in Washington, D. C., where he is presently employed.

Idaho Code § 72–1366, fixing conditions of eligibility which must be established by a claimant for unemployment benefits, so far as pertinent here, provides:

"The personal eligibility conditions of a benefit claimant are that— * * *

"(e) During the whole of any week with respect to which he claims benefits or credit to his waiting period he was able to work, available for suitable work, a benefit claimant are that—* * *

The department ruled that plaintiff's primary purpose in going to the points mentioned in California was not to seek employment, but for the purpose of returning his relative's car, to take his relative for a visit with other relatives in Los Angeles, and for the purpose of obtaining his own car in San Francisco, and that his efforts to obtain employment while in Los Angeles and San Francisco were secondary to those purposes, and constituted no more than token efforts to obtain employment. We think this conclusion was justified from the confusing and somewhat inconsistent testimony and statements made by plaintiff, and the inconclusive, indefinite and equivocal nature of his sworn testimony, as to efforts made by him in those cities to obtain employment. His contention that an exception should be made in his case to the requirement of the law—that he must show availability during the "whole" of any week for which he seeks benefits—also tends to support the conclusion that seeking employment was

not a primary purpose of his travel. Thus, the record supports the conclusion that he was not available during the whole of each of the weeks involved. Hudson v. Hecla Mining Company, 86 Idaho 447, 450, 387 P.2d 893 (1963); Claim of Jackson, 68 Idaho 360, 363, 195 P.2d 344, 346 (1948); Fly v. Industrial Commission, Mo.App., 359 S.W.2d 481 (1962); Maribello v. Unemployment Compensation Board of Review, 200 Pa.Super. 330, 188 A.2d 861, 862 (1963); Killiany v. Administrator, Unemployment Comp.Act., 23 Conn.Sup. 188, 179 A.2d 842, 844 (1962); Guidice v. Board of Review, 14 N.J.Super. 335, 82 A.2d 206, 207 (1951); Virginia Employment Commission v. Coleman, 204 Va. 18, 129 S.E.2d 6, 9 (1963).

Obviously one who is traveling for days at a time, particularly outside the area where his application is pending, and not within reach of the office or of a proposed employer, cannot be considered available. True, such travel does not render one ineligible if done as a part of the "seeking work" requirement. But here the department found, and its finding is supported by substantial evidence, that the primary purpose of plaintiff's travel was personal business. The board stated the proposition thus:

"Available means not only interested in obtaining work, but within reach if an opening occurs, where an employer is able to make contact with the prospective employee. We are sorry if exact reason was not made clear, but obviously when an individual is attending to perfectly legitimate personal business which takes him from one place to another and another, he cannot be considered available."

Plaintiff argues that he could have been reached by telephone or wire. But the record does not show that he kept the department advised as to where or through whom he might be reached. The burden was on him, not on the department, to establish his eligibility.

Order affirmed.

SMITH, McQUADE, McFADDEN and SPEAR, JJ., concur.